UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| HELEN YOUNGBLOOD, | ) | CASE NO. 4:19CV231 |
|---|---|---|
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| vs. | ) | MEMORANDUM OPINION & ORDER |
| BOARD OF COMMISSIONERS OF MAHONING COUNTY, et al., | ) | |
| DEFENDANTS. | ) | |

On January 30, 2019, plaintiff filed the present action in federal court alleging that certain promotions within Mahoning County have been awarded based on "cronyism, patronage, and racially discriminatory customs and practices." (Doc. No. 1 (Complaint ["Compl."]) ¶¶ 2, 17.) She seeks to certify this matter as a class action and defines the proposed class as: "All persons eligible for employment or advancement employed at the Mahoning County Department of Jobs & Family Service on January 1, 2014 and thereafter."[1] (*Id*. ¶ 10.)

Now before the Court is defendants' motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Doc. No. 8 ["Mot."]). Plaintiff opposes the motion (Doc. No. 11 ["Opp'n"]), and defendants have filed a reply (Doc. No. 12 ["Reply"]). For the reasons that follow, the motion is granted and the case is dismissed with prejudice.

---

[1] Although not germane to the issues presented in the pending dispositive motion, the Court observes that plaintiff's proposed class is overinclusive as it is not limited to membership in any protected class, and it would likely not be certified in this race discrimination action.

## I. BACKGROUND

Plaintiff Helen Youngblood ("Youngblood") "is an African American employee of the Mahoning County Department of Job & Family Services ['MCDJFS']."[2] (Compl. ¶ 3.) Youngblood "is also an official representative of the relevant collective bargaining unit[.]" (*Id*.) While "purported lawful hiring policies exist," Youngblood asserts that she and other similarly situated MCDJFS employees have been denied promotional opportunities due to the "long-standing and persistent custom" of the MCDJFS to "award promotions without appropriate posting of vacancies, but instead to rely on cronyism, patronage and racial identity." (*Id*. ¶ 2.)

The factual allegations supporting these conclusory accusations are scant, the essence of which is confined to one paragraph. Specifically, paragraph 17 of the complaint provides:

> On information and belief, the Director of the Department of Job and Family Services has within the past sixty months made a series of promotional appointments without prior posting, and hired individuals who lacked the requisite qualifications. The aforementioned hirings are typical of the endemic reliance on cronyism, patronage and racial discrimination in connection with the filing of positions in Mahoning County and [MCDJFS].

(*Id*. ¶ 17.)

Youngblood raises five claims: (1) due process violations under the Fourteenth Amendment; (2) equal protection under the Fourteenth Amendment; (3) disparate impact based racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.; (4) respondeat superior; and (5) violations of the Ohio Whistleblower Act, Ohio Rev. Code § 4113.52. (Compl. at 5–8.[3]) The first four claims are brought on behalf of the class as a whole,

---
[2] Youngblood offers various spellings for her employer's name. According to Mahoning County's website, the official name for the MCDJFS is Mahoning County Department of Job and Family Services. *See* https://www.mahoninngcountyoh.gov/473/Department-of-Job-Family-Services (last visited August 16, 2019).

[3] All page number references are to the page identification number generated by the Court's electronic docketing system.

while the whistleblower claim is asserted by Youngblood individually.[4]

There is no dispute that Youngblood and other MCDJFS employees are members of the American Federation of State, County & Municipal Employees ("AFSCME"), Ohio Council 8, AFL-CIO, Local 2001, and are subject to the collective bargaining agreement between the union and MCDJFS and the Mahoning Board of County Commissioners ("Board"). (*See* Compl. ¶ 3; Doc. No. 8-1 (Collective Bargaining Agreement ["CBA"]).) The CBA specifically dictates the procedure for filling vacancies and issuing promotions, and requires that such opportunities be posted prior to being awarded. (CBA, Art. 5, § 5.02 (C)(3).)

In their motion to dismiss, defendants—the Board, David Ditzler ("Ditzler"), Carol Rimedio-Righetti ("Rimedio-Righetti"), Anthony Traficanti ("Traficanti"), and MCDJFS (collectively "defendants")—posit that this Court lacks subject matter jurisdiction over the case as Youngblood's claims "represent employment disputes that are governed by" the CBA. (Mot. at 82.) Alternatively, defendants argue that this case must be dismissed with prejudice because each asserted claim fails to state a cause of action. (*Id*.)

## II. SUBJECT MATTER JURISDICTION (FED. R. CIV. P. 12(B)(1))

### A. **Standard of Review**

Because defendants' Rule 12(b)(1) challenge attacks this Court's authority to entertain this litigation, the Court addresses it first. The Sixth Circuit recognizes two kinds of motion to dismiss for lack of standing pursuant to Rule 12(b)(1): a facial attack and a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A *facial* attack merely questions the

---

[4] Youngblood brought a prior class action in 2017 in this Court against defendants raising similar claims. (Case No. 4:17-cv-1744.) After defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6), the action was dismissed upon the parties' stipulation of dismissal under Fed. R. Civ. P. 41(a)(1)(A)(ii). (*Id*., Doc. Nos. 13, 16, 17.)

sufficiency of the pleading. *Id*. In deciding a facial motion to dismiss, "the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id*. A *factual* attack, on the other hand, is an attack on the factual existence of subject matter jurisdiction. *Id*. In deciding a factual motion to dismiss, "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*. (internal citation omitted). On this type of challenge, the Court has broad discretion to consider extrinsic evidence, including affidavits and documents, and can conduct a limited evidentiary hearing if necessary. *See DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Youngblood presents a factual attack in this case, and it is therefore appropriate to consider documents, including the CBA, in order for the Court to satisfy itself of its jurisdiction. In either case, however, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus., Inc*., 798 F.2d 913, 915 (6th Cir. 1986) (emphasis omitted).

    B.    **Discussion**

Under the terms of the CBA, the union is "the sole and exclusive representative for all employees covered by [the CBA.]" (CBA Art. 3, § 3.04.) For all individuals subject to the CBA, the agreement governs all employment related matters, including wages, benefits, and promotions, and provides a detailed grievance procedure that culminates in binding arbitration. (*Id*., Art. 10, § 10.02(A)(5).) Defendants argue that, to the extent "Youngblood claims her rights were violated by defects in the posting and awarding of job vacancies, she is bound by the terms of her own contract and must follow those procedures in order to seek redress." (Mot. at 87.)

4

Youngblood retorts by noting that defendants did not raise "the alleged duty to resolve these issues through the collective bargaining grievance process" during the administrative proceedings before the Ohio Civil Rights Commission ("OCRC") and have "waived the CBA as a defense" in this case. (Opp'n at 168.)

Youngblood is mistaken, as it is well settled that subject matter jurisdiction may never be waived. *See Curry v. U.S. Bulk Transp., Inc.*, 462 F.3d 536, 539 (6th Cir. 2006) (citing *Owens v. Brock*, 860 F.2d 1363, 1367 (6th Cir. 1988) ("[D]efects in subject matter jurisdiction cannot be waived by the parties and may be addressed by a court on its own motion at any stage of the proceedings.")). Furthermore, the OCRC is not a judicial body, and its determinations are not binding upon this Court. *See Smith v. United Bhd. of Carpenters & Joiners of Am.*, 685 F.2d 164, 168 (6th Cir. 1982).

Returning then to the issue of jurisdiction, defendants correctly note that Ohio law favors arbitration provisions in collective bargaining agreements as the exclusive means of resolving employment disputes. (Mot. at 86, citing cases.) But, Youngblood brings federal statutory discrimination claims in her complaint, and for such claims to be subject to arbitration, the intent must be "explicitly stated" in the CBA and otherwise not prohibited by statute. *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258–59, 129 S. Ct. 1456, 173 L. Ed. 2d 398 (2009) (citing *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80, 119 S. Ct. 391, 142 L. Ed. 2d 361 (1998)). The CBA must "clearly and unmistakably" require the parties to arbitrate the specific claims at issue. *Id.* at 274. The Sixth Circuit has emphasized that "a statute must specifically be mentioned in a CBA for it to even approach [this] 'clear and unmistakable' standard." *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 631 (6th Cir. 1999).

Although the CBA contains a general anti-discrimination policy, the inclusion of such a policy "is not the same as requiring union members to *arbitrate* such statutory claims." *Id*. at 631–32 (quotation marks and citation omitted). The CBA's general arbitration clause does not expressly provide for arbitration of claims brought pursuant to Title VII, § 1983, or any Ohio anti-discrimination statutes (or even mention these statutes), and thus, Youngblood's right to bring such claims in a federal judicial forum is not waived by the CBA. *See, e.g., Kenney v. Superior Printing Co*., 215 F.3d 650, 653–54 (6th Cir. 2000); *O'Donnell v. City of Cleveland*, 148 F. Supp. 3d 621, 629–30 (N.D. Ohio 2015). This Court has subject matter over Youngblood's claims and, to the extent defendants seek dismissal under Rule 12(b)(1), the motion is DENIED.

### III. FAILURE TO STATE A CLAIM (RULE 12(B)(6))

#### A. Standard of Review

Defendants also seek dismissal under Federal Rule of Civil Procedure 12(b)(6). A claim survives a motion to dismiss pursuant to Rule 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 29 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true[.]" *Twombly,* 550 U.S. at 555-56 (internal citations omitted).

A court also must "construe the complaint in the light most favorable to the plaintiff."

*Inge v. Rock Fin. Corp.,* 281 F.3d 613, 619 (6th Cir. 2002) (citing *Tucker v. Ohio Dep't of Rehab. & Corr.,* 157 F.3d 453, 456 (6th Cir. 1998)). In doing so, however, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause will not do[.]" *Twombly,* 550 U.S. at 555; *see also Iqbal,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007). The Court must read *Twombly* in conjunction with Rule 8(a)(2), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); s*ee Gunasekera v. Irwin,* 551 F.3d 461, 466 (6th Cir. 2009). "[A] naked assertion . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility[.]" *Twombly,* 550 U.S. at 557. Thus, "something beyond the mere possibility of [relief] must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Id.* at 557–58 (internal citations omitted).

In deciding a motion to dismiss under Rule 12(b)(6), the Court generally may not consider matters outside of the pleadings without converting the motion into a motion for summary judgment under Rule 56. As the Sixth Circuit has held, however, there are a number of exceptions to this rule. Indeed, it is well settled that, in ruling on a Rule 12(b)(6) dispositive motion, a district court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained

therein." *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted); *see also Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007) (court may consider documents that govern a party's rights and are necessarily incorporated by reference in the complaint on a motion to dismiss) (citations omitted).

While the CBA is not appended to the complaint, it is central to the claims contained therein. Accordingly, the Court may take judicial notice of the CBA without converting the Rule 12(b)(6) motion into one for summary judgment. *Commercial Money Ctr.*, 508 F.3d at 335–36.

B. **Discussion**

*1. Due Process*

In her first claim, Youngblood alleges that the "incessant and continuous use of cronyism and race to fill public positions without following the provisions of Ohio law and published policy is violative of the federally protected interests of [Youngblood] and the putative class and is actionable as a denial of due process under the Fourteenth Amendment." (Compl. ¶ 19.) It is unclear whether Youngblood is asserting a claim for substantive or procedural due process. Under the former theory, Youngblood must allege that defendants interfered with a "'fundamental' right or liberty interest that is accorded special constitutional protection." *Brown v. City of Detroit*, 259 F. Supp. 2d 611, 618 (E.D. Mich. 2003) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 719–20, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997)). Likewise, under a procedural due process theory, Youngblood must assert that defendants "interfered with a constitutionally protected liberty or property interest." *Id.* (citing *Joelson v. United States*, 86 F.3d 1413, 1420 (6th Cir. 1996)); *see Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999) (identifying the existence of a life, liberty or property interest as an essential element of a

8

procedural due process claim in a § 1983 action).

Defendants contend that Youngblood and the putative class do not have a fundamental right or a protected property interest in a promotion. The Court agrees and finds Youngblood's first claim fatally defective for this reason. Youngblood's substantive due process theory is foreclosed by Sixth Circuit law. In *Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990), the court ruled that a fire department captain did not have substantive due process right to a promotion, finding such a contract-based right not to be so deeply rooted in our country's notions of liberty and justice as to rise to the level of a fundamental right. *See also Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1236 (6th Cir. 1991) (holding that "there is no substantive due process right involved in [the plaintiff police officer's] claim of failure to carry out a purported understanding about promotion procedures[]").

Youngblood's reliance on defendants' promotion practices also fails, as a matter of law, to support a procedural due process claim. To have a property interest in a benefit to support a procedural due process claim, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents State Coll. v. Roth*, 408 U.S. 564, 577, 822 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). The Supreme Court has further explained that property interests are not created by the Constitution, but rather by "existing rules or understandings that stem from an independent source such as state laws—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id*.

Youngblood does not identify the "Ohio law" she references that supports her right to a promotion, although the CBA clearly sets forth the promotion process for union employees, of

which Youngblood is one. The right, therefore, is derived from the CBA. While the CBA requires certain postings before a promotion can be awarded, it does not require that the award be given to any particular union member. The Sixth Circuit has held that "[i]f an official has unconstrained discretion to deny the benefit, a prospective recipient of that benefit can establish no more than a unilateral expectation to it." *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409–10 (6th Cir. 2002) (quotation marks and citation omitted). Youngblood fails to assert any facts demonstrating that the appointing authority's discretion to promote is constrained in any way, and the Court can find none in the relevant CBA.

Even if she could establish the existence of a property interest in a promotion, the claim would still fail because Youngblood "has failed to plead, as [s]he must, that the 'state's post-deprivation remedies for redressing the wrong are inadequate.'" *Brown*, 259 F. Supp. 2d at 620 (quoting *Jackson v. City of Columbus*, 194 F.3d 737, 750 (6th Cir. 1999)). "Nor does it appear that [Youngblood] could make such an allegation, where the collective bargaining agreement governing [her] employment includes grievance and arbitration mechanisms." *Id.* (citing *Chaney v. Suburban Bus Div. of Reg'l Transp. Auth.*, 52 F.3d 623, 630 (7th Cir. 1995) (holding that "grievance and arbitration procedures can (and typically do) satisfy the requirements of post-deprivation due process[]")). Because the CBA provides a process for grieving a failure to promote (or, as defendants suggest Youngblood is claiming, a failure to be considered for a promotion by skipping the posting requirements), the complaint fails to state a procedural due process claim.

2. *Equal Protection*

Youngblood's second claim purports to raise a right to relief under the Equal Protection

Clause. Specifically, the complaint provides:

> 21. Defendants' acts in making employment related decisions such as hiring, termination and promotions on the basis of patronage and cronyism results in unlawful treatment of similarly situated individuals, MCDJFS employees, on the basis of race, without a compelling governmental interest.
>
> 22. Black employees at MCDJFS, as a group, are less likely to have the political and patronage network available to enable them to receive the preferential treatment accorded to the employees unlawfully promoted and complained of herein.

(Compl. ¶¶ 21-22.)

Even in the context of an equal protection claim based on disparate impact, "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977) (noting that "[d]ispropionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination[]") (quotation marks and citation omitted); *see Spurlock v. Fox*, 716 F.3d 383, 400 (6th Cir. 2013) (holding that "disparate impact standing alone . . . does not establish a constitutional violation[]").

While she makes passing references to "race discrimination" and "racial identity," Youngblood does not allege (or set forth factual allegations that would support a conclusory allegation) that defendants acted with a discriminatory intent or purpose, nor can the Court infer such intent or purpose merely from the alleged disparate impact and the fact that defendants may have failed to follow the contractual posting requirements. In fact, her conclusory allegations suggest that defendants' intent was actually to benefit their friends and "cronies," and not to discriminate against members of a protected class on the basis of race. (Compl. ¶¶ 2, 21, 22.) For this reason alone, the equal protection claim is subject to dismissal. Additionally, as set forth in the Court's discussion of Youngblood's Title VII claim below, the Court finds that the complaint

allegations fail to set forth a plausible claim of actionable race discrimination. *See Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003) (analyzing § 1983 equal protection claims under the framework governing Title VII discrimination claims).

    3. *Title VII*

In the fourth claim, Youngblood asserts that she and the putative class are "members of a protected racial class under Title VII[,]" and that "[t]he acts complain[ed] of herein have a disparate impact upon [Youngblood] and the putative class." (Compl. ¶¶ 25, 26.) Title VII proscribes employment practices that are "fair in form, but discriminatory in operation." *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S. Ct. 849, 28 L. Ed. 2d 158 (1971). Unlike an equal protection discrimination claim, a Title VII "disparate impact" claim does not require proof that the defendant intended to discriminate, but a plaintiff proceeding under such a theory must "instead prove that a particular employment practice, although neutral on its face, has produced a significant adverse effect on a protected group to which the plaintiff belongs." *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 830 (6th Cir. 2000).

Defendants insist that Youngblood's Title VII claim does not state a cause of action because Youngblood has failed to plead facts supporting each element of a *prima facie* case under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and its progeny. Defendants also offer this argument as an alternative reason why Youngblood's equal protection claim must fail as a matter of law. (Mot. at 91–93.)

Defendants have conflated evidentiary burdens with the pleading requirements of Rule 8. The Supreme Court has made clear that the elements necessary to establish a *prima facie* case

under *McDonnell Douglas* are not pleading requirements. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (noting "it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case.") Recognizing the possibility that discovery may produce direct evidence of discrimination, the Supreme Court concluded that the ordinary rules of notice pleading apply. *Id*. at 514.

"The Supreme Court's subsequent decisions in *Twombly* and *Iqbal* did not alter its holding in *Swierkiewicz*." *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012). "*Twombly* distinguished *Swierkiewicz*, explaining that the prior case 'did not change the law of pleading,' but simply reemphasized that application of the *McDonnell Douglas* prima facie case at the pleading stage 'was contrary to the Federal Rules' structure of liberal pleading requirements.'" *Id.* (quoting *Twombly*, 550 U.S. at 570.) "Still the Supreme Court established a 'plausibility' standard in *Twombly* and *Iqbal* for assessing whether a complaint's factual allegations support its legal conclusions, and that standard applies to causation in discrimination claims." *Id*. at 610. Under the plausibility standard, Youngblood's complaint "need not present 'detailed factual allegations,' [but] it must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that Youngblood and others similarly situated were the victims of disparate impact race discrimination. *Id*. at 610 (quoting *Iqbal*, 556 U.S. at 678–79.) Youngblood's complaint, however, is devoid of facts that would support such an inference.

In support of her Title VII disparate impact claim, Youngblood relies exclusively on her conclusory allegations that defendants have awarded promotions on the basis of friendship and

cronyism without posting the positions, and that that this practice has had a disparate impact on her and the putative class because African Americans are "less likely to have the political and patronage network available" to take advance of such preferential treatment. But, it is well settled that Title VII disparate impact claims require the existence of a "facially neutral" policy or practice. *See Smith v. City of Jackson, Miss.,* 544 U.S. 228, 239, 125 S. Ct. 1536, 161 L. Ed. 2d 410 (2005) (claims that stress "disparate impact" involve employment practices that are facially neutral); *Raytheon Co. v. Hernandez,* 540 U.S. 44, 52, 124 S. Ct. 513, 157 L. Ed. 2d 357 (2003) (disparate-impact claims "involve employment practices that are facially neutral") (quotation marks and citation omitted). As the Supreme Court explained in *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 335 n.15, 97 S. Ct. 1843, 52 L.Ed.2d 396 (1977), "[c]laims of disparate treatment may be distinguished from claims that stress 'disparate impact.' The latter involve employment practices *that are facially neutral* in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity."(emphasis added).

Here, a policy or practice of intentionally awarding promotions, without the proper postings, for the purpose of benefitting one's political friends and allies can hardly be considered facially neutral. *See, e.g.*, *Ayers v. Multiband Field Servs., Inc.*, No. 13-10765, 2013 WL 5244918, at *3–5 (E.D. Mich. Sept. 18, 2013) (policy of not hiring individuals weighing more than 250 pounds was not facially neutral to support a disparate impact claim). Youngblood cannot rely on a facially discriminatory policy as a basis for bringing a disparate impact case in order to avoid the requirement of pleading specific facts demonstrating racial discriminatory intent.

She also offers no factual allegations from which the Court could infer that such a policy or practice, even if it were facially neutral, actually exists. Specifically, she fails to identify *any* positions that were awarded in the manner she describes in the complaint. Youngblood offers nothing but the "naked assertion [of the existence of such a policy] devoid of further factual enhancement[.]" *Keys*, 684 F.3d at 610 (quoting *Iqbal*, 556 U.S. at 678). It is precisely the type of pleading "that *Twombly* and *Iqbal* prohibit." *Id*.

Finally, the Court notes that Youngblood has not alleged facts showing that the alleged policy had *any* negative effect on the protected class, let alone a *disproportionate* effect. *See, e.g., HDC, LLC v. City of Ann Arbor*, 675 F.3d 608 (6th Cir. 2012). In *HDC*, the plaintiff alleged that the city's refusal to further extend a contract to build housing projects had a disparate impact on disabled individuals. *See HDC, LLC v. City of Ann Arbor*, No. 09-14027, 2010 WL 2232220, at *5 (E.D. Mich. May 27, 2010). The district court dismissed the claim because the presence of a disparate impact rested entirely on the plaintiff's unsupported speculation that because it is hard for handicapped individuals to secure housing there must be a disparate impact. *Id*. The Sixth Circuit affirmed, finding the plaintiffs' disparate impact claim fatally flawed because it was not supported by factual allegations showing that any disproportionate effect resulted from the city's policy. *HDC*, 675 F.3d. at 613.

Similarly, Youngblood offers no factual support for her conclusory allegation of a disparate effect, relying instead on her suspicion that there must be such an effect because of her unsubstantiated assumption that African Americans do not have as well established political friend networks as other groups. Even at the pleading stage, it was incumbent on Youngblood to identify, with specificity, what the impact is, and how it is more burdensome than the impact on

nonprotected groups. Her "threadbare recitals" of the elements of her Title VII claim, "supported by mere conclusory statements" are insufficient to meet the plausibility standard of *Iqbal* and *Twombly*. *See Iqbal*, 556 U.S. at 678. Simply put, "the well-pleaded facts do not permit the court to infer more than the mere possibility of [discrimination]." *Id*. at 679.

Still, Youngblood insists that she should be permitted to conduct discovery, "that is [take] the depositions upon oral examination of key County officials and examine key documents, [so that] it can be shown that unlawful racial discrimination occurred." (Opp'n at 167–68.) However, a motion under Rule 12(b)(6) tests the sufficiency of the allegations in a complaint, and the motion is decided before (and without) discovery. *See, e.g., Kolley v. Adult Protective Servs.*, 725 F.3d 581, 587 (6th Cir. 2013) ("A plaintiff is not entitled to discovery before a motion to dismiss, and dismissal under Rule 12(b)(6) helps protect defendants from expending resources on costly discovery for cases that will not survive summary judgment.") While discovery can be useful in quantifying and determining the full extent of the disparate impact, it cannot be used to justify the right to even bring such a claim. Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. Because Youngblood's conclusory allegations fail to "nudge[ the claim] across the line from conceivable to plausible," it must be dismissed. *Twombly*, 550 U.S. at 570.

    4. *Ohio Whistleblower Act*

Youngblood also alleges that she was retaliated against by defendants because she reported "violations of Ohio law concerning hiring, promotion and terminations within MCDJFS." (Compl. ¶ 37.) She maintains that "Defendants Bush and Wasko have taken disciplinary and retaliatory action against [her] for her activities as a union official and an Ohio

16

employee reporting violations under [Ohio Rev. Code §] 4113.52 'The Ohio Whistleblower Act.'" (*Id*. ¶ 38.) Defendants insist that these allegations are insufficient to demonstrate that she qualifies for protection as a whistleblower under Ohio law.

Section 4113.52 of the Ohio Revised Code prohibits employers from taking "any disciplinary or retaliatory action against an employee for making any report authorized by" § 4113.52(A)(1) or (2). Ohio Rev. Code § 4113.52(B). To come within the protections of the Ohio Whistleblowers Act, "an employee must strictly comply with the dictates of [Ohio Rev. Code §] 4113.52." *Dobrski v. Ford Motor Co*., No. 1:09CV963, 2013 WL 1303786, at *4 (N.D. Ohio Mar. 28, 2013) (collecting cases).

Pertinent to the present case, § 4113.52 requires that the employee report the violation of "any state or federal statute, any ordinance or regulation of a political subdivision, or any work rule or company policy of the employee's employer [that] the employee reasonably believes . . . is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, or an improper solicitation for a contribution[.]" Ohio Rev. Code § 4113.52(A)(3). The statute also requires that the report be in writing. *See Contreras v. Ferro Corp*., 652 N.E.2d 940, 944 (Ohio 1995) (holding that "the sole acceptable manner in which [an] employee may 'blow the whistle' to outside authorities" is by filing "a written report that provides sufficient detail to identify and describe the violation") (emphasis omitted). Defendants argue that Youngblood has failed to allege that she made a written report to her employer identifying a qualifying violation.

Without elaboration, Youngblood alleges that she reported "violations of Ohio law concerning hiring, promotion and terminations[.]" (Compl. ¶ 37.) There is nothing about this

17

vague allegation that would suggest that she reported an illegal activity that she reasonably believed was a felony, an improper solicitation, or a hazard to public health. *See, e.g., Herrington v. Daimlerchrysler Corp.*, 125 F. App'x 23, 27 (6th Cir. 2004) (finding that employee who reported employer's alleged overreporting of work-related injuries in violation of OSHA regulations did not qualify for protection under § 4113.52). For this reason alone, her state whistleblower claim would fail. However, as further evidence that her claim is fatally flawed, the Court notes that Youngblood did not allege that she placed her report in writing. Having failed to allege facts from which the Court could infer that she strictly complied with the statute, her whistleblower claim cannot survive Rule 12(b)(6).[5]

**IV. LEAVE TO PLEAD**

Because she has failed to plead sufficient factual content to support any of the asserted claims, Youngblood's entire complaint is subject to dismissal. However, Youngblood states that "[i]n the event the Court believes the [c]omplaint is insufficient in any respect, [she] requests leave to file an amended [c]omplaint." (Opp'n at 168.) She does not attach a proposed amended complaint to her opposition, nor does she elaborate on the expected content of any proposed amendment. Youngblood's request to amend is DENIED.

In *United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 739 F. App'x 330, 335 (6th Cir. 2018), the Sixth Circuit affirmed this Court's denial of a similar bare request to amend to cure pleading deficiencies. In so ruling, the court explained:

---

[5] In Youngblood's fourth claim, she alleges that Mahoning County and certain individual defendants are "liable for injuries to the class" via the doctrine of respondeat superior. (Compl. ¶¶ 29-33.) The Court need not reach the question of whether this theory of liability would have been available with respect to any of these defendants on any claim because Youngblood has failed to allege any constitutional violations. *See Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers.")

"The problem with the lack of a motion or proposed amendment . . . is that '[w]ithout viewing the proposed amendment, it [is] impossible for the district court to determine whether leave to amend should have been granted.'" *Islamic Ctr.* [*of Nashville v. Tennessee*], 872 F.3d [377,] 387 n. 7 (alterations in original) (quoting *Spadafore v. Gardner*, 330 F.3d 849, 853 (6th Cir. 2003)); *see also Beydoun v. Sessions*, 871 F.3d 459, 470 (6th Cir. 2017) ("[I]mplicit in [Rule 15(a)] is that the district court must be able to determine whether justice so requires, and in order to do this, the court must have before it the substance of the proposed amendment." (second alteration in original) (quoting *Roskam Baking Co. v. Lanham Mach. Co.*, 288 F.3d 895, 906 (6th Cir. 2002))).

*Id.* In the present case, Youngblood has not even hinted as to how an amended complaint could potentially cure the pleading deficiencies set forth in defendants' Rule 12(b)(6) motion, nor has she otherwise in her briefing identified any additional factual allegations at her disposal that could breathe life into the naked assertions and empty conclusions that currently provide the foundation for her complaint. Under these circumstances, the Court cannot find that "justice so requires" that the Court extend to Youngblood leave to amend.[6] *See* Fed. R. Civ. P. 15.

## V. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED and this case is DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED**.

Dated: September 9, 2019

HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE

---

[6] Additionally, the Court notes that, as was the case in *Harper*, the present complaint represents Youngblood's second attempt to bring these claims in federal court. Her 2017 case involved the same alleged misconduct by defendants and asserted similar claims. Notwithstanding the fact that defendants raised many of the same deficiencies in their Rule 12(b)(6) motions to dismiss that prior action, Youngblood elected to not, or was unable to, offer any factual allegations in support of her conclusory allegations in this case. (Case No. 4:17-cv-1744, Doc. Nos. 1, 4, 13.)